UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AHSAN MOHIUDDIN, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 313 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| NORTHWESTERN MEDICINE CENTRAL | ) | |
| DUPAGE HOSPITAL, and NORTHWESTERN | ) | |
| MEMORIAL HEALTHCARE, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Northwestern Medicine Central DuPage Hospital and Northwestern Memorial Healthcare

seek dismissal of Ahsan Mohiuddin's first amended complaint, Docs. 16, 18, under Civil Rules

12(b)(1) and 12(b)(6). Doc. 19. In resolving a Rule 12(b)(1) motion asserting a facial challenge

to subject matter jurisdiction, as in resolving a Rule 12(b)(6) motion, the court assumes the truth

of the operative complaint's well-pleaded factual allegations, though not its legal conclusions.

*See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (Rule 12(b)(6));

*Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009) (Rule 12(b)(1)).

The court must also consider "documents attached to the complaint, documents that are critical

to the complaint and referred to in it, and information that is subject to proper judicial notice,"

along with additional facts set forth in Mohiuddin's brief opposing dismissal, so long as those

additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714

F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Mohiuddin as those

materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).

In January 2016, Mohiuddin's elderly mother fell in her home and was taken to Northwestern Medicine Central DuPage Hospital.  Doc. 16 at pp. 5-6, ¶¶ 1-2.  Two days later, Mohiuddin flew to Chicago from Los Angeles.  *Id*. at p. 6, ¶ 5; Doc. 18 at 1.  When Mohiuddin arrived, his mother was alive but unconscious and not hooked up to any "monitoring equipment/instrumentation of any sort or kind."  Doc. 16 at p. 7, ¶ 6.  Mohiuddin asked to speak to a doctor, but was not permitted to do so.  *Ibid*.

The next morning, Mohiuddin's mother stopped breathing and a doctor pronounced her dead.  *Ibid*.  Mohiuddin does not know "the nature, scope, or extent of whatever evaluation/diagnosis [the emergency room] physician … performed on his (said) mother" when she first arrived at the hospital, *id*. at p. 6, ¶ 3, and "[n]o explanation was given [him] … as to what exactly was the diagnosis made, what treatment was planned or given, when [his mother] was moved from 'ER' to ward room, and if no treatment was given, why not," *id*. at p. 7, ¶ 7.  The first amended complaint seeks "recovery of pecuniary damages/losses suffered by [Mohiuddin] … as a direct and/or proximate result of the Defendants' (herein) wrongfully causing death of his mother … in his individual capacity (for injuries to himself), as (biological) son of the deceased NOT as her legal representative … whether that be an estate beneficiary, legal representative, executor, or administrator … ."  *Id*. at pp. 1-2, ¶ I(A).

Defendants seek dismissal of the first amended complaint.  Their arguments concerning survival actions, Doc. 30 at 3-6, are misplaced because Mohiuddin is not bringing a survival action.  "A survival action … permits the representative of the estate to prosecute a claim for the personal injury that the decedent could have brought had he lived."  *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 300 n.1 (7th Cir. 2010) (quoting *Patch v. Glover*, 618 N.E.2d 583, 591 (Ill. App. 1993)); *see also Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1123 (Ill. 2015) ("[A]n

action under the survival statute … allows a representative of the decedent to pursue those statutory or common law claims that accrued prior to the decedent's death.").  Because Mohiuddin brings this action "in his individual capacity" for "damages/losses suffered by [him]," and "NOT as [his mother's] representative" for personal injury to her, Doc. 16 at pp. 1-2, ¶ I(A), his suit is not a survival action.

Rather, the first amended complaint is best read as raising a wrongful death claim, a negligent infliction of emotional distress ("NIED") claim, and an intentional infliction of emotional distress ("IIED") claim on behalf of Mohiuddin.  Defendants are wrong to argue that the court lacks diversity jurisdiction over those claims.  Doc. 30 at 4-5.  The parties to those claims are Mohiuddin, a citizen of California, and Northwestern Medicine Central DuPage Hospital and Northwestern Memorial Healthcare, citizens of Illinois, and the damages sought exceed $75,000, Doc. 16 at pp. 4-5, ¶ C; *id.* at p. 8, ¶ 3, which satisfies the requirements of 28 U.S.C. § 1332(a).

The first amended complaint's wrongful death claim is dismissed on the merits, however, because Mohiuddin has no such claim under Illinois law.  In Illinois, wrongful death claims must be brought "by and in the names of the personal representatives of [the] deceased person."  740 ILCS 180/2(a).  As previously noted, Mohiuddin's claims are brought "in his individual capacity"—"NOT as [his mother's] legal representative."  Doc. 16 at pp. 1-2, ¶ I(A).  Given Mohiuddin's framing of his case, the wrongful death claim is dismissed.  *See Will v. Nw. Univ.*, 881 N.E.2d 481, 492-93 (Ill. App. 2007); *Mio v. Alberto-Culver Co.*, 715 N.E.2d 309, 312 (Ill. App. 1999).

Nor does the first amended complaint state an NIED claim.  In Illinois, "bystanders"— those who are not the "direct victims" of the defendant's negligence—can recover for NIED only

if they "satisfy the zone-of-physical danger test, which limits potential recovery to those individuals in a zone of physical danger and who, because of the defendant's negligence, had reasonable fear for their own safety which caused them emotional distress." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 703 (7th Cir. 2009) (internal quotation marks and brackets omitted). Mohiuddin's allegations involve Defendants' acts and omissions in treating his mother. It cannot be inferred from these allegations that Mohiuddin was either a direct victim of Defendants' alleged negligence or that he was in the zone of danger. The NIED claim accordingly is dismissed. *See id*. at 703 & n.3 (holding that the complaint set forth "insufficient facts or allegations to support a bystander claim under the [zone-of-physical danger] test" where it did not allege facts showing that the plaintiff "fear[ed] for [her] own safety").

Finally, the first amended complaint does not state an IIED claim. A plaintiff can recover for IIED only if he alleges conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). In addition, the plaintiff must allege that the defendant "either intend[ed] that his conduct inflict severe emotional distress or kn[e]w that there [was] at least a high probability that his conduct [would] cause severe emotional distress." *Ibid*. Because the first amended complaint contains no allegations concerning the steps that Defendants' employees did or did not take to treat Mohiuddin's mother, it does not allege extreme and outrageous conduct. *See Cairel v. Alderden*, 821 F.3d 823, 835-36 (7th Cir. 2016) (holding that police officers did not act in an extreme or outrageous manner when interrogating a mentally disabled person, where the plaintiff did not establish that the officers departed from "reasonable and ordinary police practices"); *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008) (dismissing an IIED claim where the

complaint's allegations established that an employer's termination of an emotionally disturbed employee was "a legitimate personnel decision"). Of equal if not greater significance, nor does Mohiuddin allege generally that Defendants' employees knowingly or intentionally caused *him* emotional distress or allege any facts from which the requisite intent can be inferred. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 661 (7th Cir. 2001) (affirming summary judgment where there was "scant evidence that [the defendant] intended to inflict distress upon [the plaintiff]"); *see also Titus v. Ill. Dep't of Transp.*, 828 F. Supp. 2d 957, 973 (N.D. Ill. 2011) (dismissing an IIED claim where the complaint did not allege facts showing that the defendants intentionally or knowingly caused emotional distress); *Redd v. Dougherty*, 578 F. Supp. 2d 1042, 1058 (N.D. Ill. 2008) (same), *aff'd sub nom. Redd v. Nolan*, 663 F.3d 287 (7th Cir. 2011). The first amended complaint's IIED claim accordingly is dismissed.

Mohiuddin moves for leave to file a second amended complaint. Docs. 31, 33, 36. Defendants oppose the motion and, in the alternative, move to dismiss the second amended complaint. Docs. 30, 41. The proposed second amended complaint would join Central DuPage Hospital Association as a new defendant, Doc. 36 at ¶ 4; raise claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and the Illinois Living Will Act ("ILWA"), 755 ILCS 35/1 *et seq*., Doc. 26 at pp. 10-11, ¶¶ 13-14; add several pages of allegations concerning Defendants' employees acts and omissions in treating his mother; and allege that the employees acted "negligently and willfully," *id*. at pp. 8-11, ¶¶ 8-17.

Defendants correctly note that this new material would not cure the above-mentioned defects in Mohiuddin's wrongful death and NIED claims. Nor does it allege that Defendants' employees acted with the mental state required to support an IIED claim. While the second amended complaint alleges that Defendants' employees *acted* negligently and willfully, it does

not allege that they had the *specific intent* to cause emotional distress or knew that there was a high probability that emotional distress would result—indeed, to the extent that their acts were merely negligent, those acts could not have been committed with the required scienter. *See Cangemi v. Advocate S. Suburban Hosp.*, 845 N.E.2d 792, 813 (Ill. App. 2006) (affirming dismissal of an IIED claim where the complaint alleged that a doctor intentionally concealed from a patient that he performed an emergency c-section after observing fetal distress, because the allegations implied that the doctor did not intend for the patient to discover the fetal distress or the cover-up and therefore did not intend for his actions to cause emotional distress). And even if intent to cause emotional distress could be inferred, the second amended complaint does not allege that Defendants' employees' intent was directed toward Mohiuddin. Mohiuddin's ILWA claim also fails, as the provision he cites contains a rule of interpretation, not a substantive prohibition. *See* 755 ILCS 35/9(f) ("Nothing in this Act shall be construed to condone, authorize or approve mercy killing … .").

Defendants argue, without elaboration or citation to legal authority, that Mohiuddin lacks standing to pursue his EMTALA claim because he "does not allege that defendants committed any [of] these violations against him," but instead "claims that all violations were made against his mother." Doc. 30 at 6-7. This argument mischaracterizes the second amended complaint. Reasonably read in the light most favorable to Mohiuddin, the complaint alleges that Defendants' EMTALA violations caused his mother's death and that her death caused him injury. Doc. 26 at pp. 1-2, ¶ I(A); *id*. at p. 10, ¶ 13. Moreover, it is far from clear that Mohiuddin lacks statutory standing to pursue his EMTALA claim. An EMTALA suit may be brought by "[a]ny individual who suffers personal harm as a direct result of a participating hospital's" EMTALA violation, 42 U.S.C. § 1395dd(d)(2)(A), and thus might provide relief to "a

bereaved relative … when she is harmed in direct consequence of an EMTALA violation."
*Correa v. Hosp. S.F.*, 69 F.3d 1184, 1196 (1st Cir. 1995); *see also Moses v. Providence Hosp. & Med. Centers, Inc.*, 561 F.3d 573, 579-82 (6th Cir. 2009); *but see Malave Sastre v. Hosp. Doctor's Ctr., Inc.*, 93 F. Supp. 2d 105, 111 (D.P.R. 2000) (holding that EMTALA's legislative history forecloses this reading).  Because Defendants' standing argument is devoid of legal analysis and citation to pertinent authority, it is forfeited for purposes of this motion to dismiss. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

For these reasons, Mohiuddin's motion for leave to amend is granted.  Defendants' motion to dismiss the second amended complaint is denied as to the EMTALA claim, but granted as to all other claims, which are dismissed with prejudice.  *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in denying leave to amend, either by dismissing a complaint with prejudice or by denying a post-judgment motion, when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint."); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem … .").

February 25, 2019

_____
United States District Judge