UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AHSAN MOHIUDDIN, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 313 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| NORTHWESTERN MEDICINE CENTRAL DUPAGE HOSPITAL, NORTHWESTERN MEMORIAL HEALTHCARE, and CENTRAL DUPAGE HOSPITAL ASSOCIATION, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this suit against Northwestern Medicine Central DuPage Hospital and two related entities, Ahsan Mohiuddin seeks relief in connection with the very unfortunate death of his mother at the hospital. Earlier in the litigation, the court dismissed with prejudice Mohiuddin's wrongful death and emotional distress claims, but granted him leave to file his proposed second amended complaint to the extent it sought relief under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. Docs. 50-51 (reported at 2019 WL 9188479 (N.D. Ill. Feb. 25, 2019)); Docs. 55-57 (the second amended complaint). Defendants now move under Civil Rule 12(b)(6) to dismiss the EMTALA claim. Doc. 58. The motion is granted, and the case is dismissed.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred

1

to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Mohiuddin's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Mohiuddin as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

On January 14, 2016, Mohiuddin's elderly mother fell in her home and was taken to Northwestern Medicine Central DuPage Hospital. Doc. 55 at 6. She was screened in the emergency room, where hospital staff misdiagnosed her "emergency medical condition." Doc. 57 at 1 (amending Doc. 56 at 3). Mohiuddin flew to Chicago from Los Angeles two days later. Doc. 55 at 6. When he arrived at the hospital, he found that his mother had been moved "to a general ward room." *Ibid*. She was alive but "laying flat with her eyes closed and breathing heavily" and was not hooked up to any "monitoring instruments," "intravenous apparatus [to feed] her fluid nutrition or medicine," or "respiratory apparatus for breathing facilitation." *Id*. at 6-7. The hospital "failed to stabilize her condition in any manner whatsoever" and "did not make any reasonable effort to transfer her to any other facility so that [another hospital] could" provide the treatment she needed. *Id*. at 6.

The next morning, on January 17, 2016, Mohiuddin's mother stopped breathing and was pronounced dead. *Id*. at 7. Her hospital death certificate lists Torsades de Point and Acute Hypoxic Respiratory Failure as the causes of death. *Id*. at 14. According to Mohiuddin, however, her death was instead "due to lack of hydration and nutrition or due to [a] combination of [the hospital's] misdiagnosis and insufficient or flawed stabilization." *Id*. at 6.

2

**Discussion**

Mohiuddin seeks compensatory damages under EMTALA for the "extreme anguish, grief, sorrow, emotional distress, mental suffering, loss of society and … drastic deterioration in his health" resulting from his mother's death. Doc. 55 at 4. EMTALA "was enacted to address the problem of patient 'dumping,' in which hospitals would not provide the same treatment to uninsured patients as to paying patients, either by refusing care to the uninsured patients or by transferring them to other facilities." *Beller v. Health & Hosp. Corp.*, 703 F.3d 388, 390 (7th Cir. 2012). "EMTALA imposes two duties on hospitals with respect to patients who come to their emergency rooms: first, to provide medical screening for any emergency condition; and second, as to any emergency condition, to stabilize the patient prior to any transfer to another facility." *Ibid.* The complaint does not plausibly allege that Defendants violated either duty.

First, Mohiuddin alleges that Defendants' misdiagnosed his mother's "emergency medical condition" during screening. Doc. 57 at 1 (amending Doc. 56 at 3). That allegation fails to allege a breach of the hospital's duty to "*provide* medical screening for any emergency condition." *Beller*, 703 F.3d at 390 (emphasis added). To the contrary, the allegation acknowledges that the hospital screened Mohiuddin's mother, and charges only that the screening erroneously misdiagnosed her.

That acknowledgement is significant, as "EMTALA … was not intended to be a federal malpractice statute." *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002) (en banc); *see also St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 694 (10th Cir. 2002) ("[EMTALA] is an anti-dumping provision, not a federal medical malpractice law."); *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1169 (9th Cir. 2002) (similar). Rather, EMTALA's screening requirement mandates only that a hospital give every patient arriving at the emergency

department roughly the same type of examination. *See Vickers v. Nash Gen. Hosp., Inc.*, 78 F.3d 139, 143 (4th Cir. 1996) ("EMTALA's requirement that individuals seeking emergency care receive an appropriate screening examination obligates hospitals to apply uniform screening procedures to all individuals coming to the emergency room. The screening provision, at the core, thus aims at disparate treatment.") (internal quotation marks and citations omitted); *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1138 (8th Cir. 1996) ("An inappropriate screening examination is one that has a disparate impact on the plaintiff. Patients are entitled under EMTALA, not to correct or non-negligent treatment in all circumstances, but to be treated as other similarly situated patients are treated, within the hospital's capabilities.") (collecting cases); *Correa v. Hosp. S.F.*, 69 F.3d 1184, 1192 (1st Cir. 1995) ("The essence of this requirement is that there be some screening procedure, and that it be administered even-handedly."). EMTALA does not impose any particular screening requirements, but instead leaves hospitals free to craft their own. *See Summers*, 91 F.3d at 1138 ("It is up to the hospital itself to determine what its screening procedures will be. Having done so, it must apply them alike to all patients.").

Mohiuddin admits that his mother was screened upon arriving at the hospital, and he pleads no facts suggesting that she was treated worse than any other patient arriving at its emergency room. Doc. 56 at 3 (alleging that the hospital "misdiagnosed or did incomplete diagnosis of [his mother] *while screening her* or running *screening tests* on her") (emphasis added). She was not turned away or transferred to another hospital (that is, dumped); rather, she was admitted as an inpatient when she was moved from the emergency department "to a general ward room." *Id*. at 6. Absent any allegation of disparate treatment, the hospital satisfied EMTALA's screening duty.

Second, Mohiuddin alleges that Defendants "negligently failed to stabilize [his mother's] condition in any manner whatsoever" and "did not make any reasonable effort to transfer her to any other facility so that it could properly and effectively do what they negligently did not" do. *Id*. at 3. But the duty to stabilize is triggered only if a hospital transfers a patient to another facility or releases her. *See Beller*, 703 F.3d at 390 (describing EMTALA's second duty as the duty "to stabilize the patient prior to any transfer to another facility"); *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 894 (7th Cir. 2003) ("Once an emergency medical condition is detected, the hospital must act to stabilize the condition … before the patient can be transferred or released."); *Alvarez-Torres v. Ryder Mem'l Hosp., Inc.*, 582 F.3d 47, 52 (1st Cir. 2009) ("Th[e] [stabilization] directive plainly applies only where transfer occurs."); *Harry*, 291 F.3d at 770-72 (same). Because the complaint does not allege that Mohiuddin's mother was transferred to another hospital or released, the stabilization duty was not triggered.

Before concluding, the court addresses Mohiuddin's motion for appointment under 740 ILCS 180/2.1 as special administrator of his mother's estate. Doc. 69. As the motion explains, Mohiuddin seeks this appointment to solidify his status as a proper EMTALA plaintiff. *Id*. at 1 ("Plaintiff … hereby moves [the] court pursuant to [EMTALA] and 740 ilcs 180/2.1 to appoint him the special administrator of the estate of [his mother] … ."); *ibid*. ("By virtue of [the] filing of his second Amended complaint in which he is seeking pecuniary/personal injury damages on account of Defendants' specified violations of EMTALA, directly resulting in his mother's [death] … [Mohiuddin] has become 'any individual' referred to in [EMTALA] and therefore entitled to 'those damages available for personal injury under the law of the state in which the hospital is located' … .") (cleaned up). As the court explained in its prior opinion, there is substantial authority to support Mohiuddin's ability to bring the EMTALA claim on his own

5

accord, even if he is not his mother's special administrator. 2019 WL 9188479, at *3-4. In any event, given the dismissal of the EMTALA claim on the merits, Mohiuddin's motion to be appointed special administrator for the purpose of pursuing that claim is denied as moot.

**Conclusion**

Mohiuddin's motion for appointment as special administrator of his mother's estate is denied, and Defendants' motion to dismiss Mohiuddin's EMTALA claim, his sole remaining claim, is granted. The dismissal is with prejudice, as Mohiuddin already amended twice, does not request further leave to amend, and does not suggest how further amendment might result in his pleading a plausible EMTALA claim. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in … dismissing a complaint with prejudice … when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint."). Judgment will be entered in favor of Defendants and against Mohiuddin.

January 23, 2020

_____
United States District Judge